IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | | |
|---|---|---|
| **David Bell**, | ) | Civil Action No.  2:15-3534-CWH-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Nucor Corporation, d/b/a Nucor Steel,** | ) | |
| **Andre Porche and Chris Stow,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Ninth Judicial Circuit.  As Plaintiff asserts various federal causes of action, the case was removed to this United States District Court by the Defendants.  28 U.S.C. § § 1441 and 1446.

Shortly after removing the case to this Court, Defendants filed a partial motion to dismiss pursuant to Rule 12, Fed.R.Civ.P.  After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion on October 13, 2015, following which the Defendants filed a reply memorandum on October 23, 2015.  Defendants' motion is now before the Court for disposition.[1]

_____

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The Defendants have filed a partial motion to dismiss.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



# I.

## (Waived and/or Withdrawn Claims)

Plaintiff, a white male, is a former employee of the Defendant Nucor Corporation. In his Complaint, Plaintiff states that he is asserting a claim for race discrimination in violation of 42 U.S.C. § 1981 against Nucor (Count One), a claim of retaliation in violation of Title VII and 42 U.S.C. § 1981 against Nucor (Count Two), a hostile work environment claim based on age and race in violation of the ADEA, Title VII, and § 1981 against all Defendants (Count Three), a claim for slander and intentional interference with a contract against the natural Defendants Porche and Stow (Count Four), and a claim for wrongful termination in violation of public policy [Defendant not identified] (Count Five). See generally, Plaintiff's Complaint.

In their partial motion to dismiss, Defendants seek dismissal of several of these claims, in response to which Plaintiff concedes or acknowledges that he is not asserting any claims against Porche or Stow under Title VII, § 1981, or the ADEA, nor is he asserting a Title VII race discrimination claim or an ADEA claim against the Defendant Nucor.   Further, Plaintiff also conceded and/or acknowledged that he is not asserting a discrimination claim based on a failure to be promoted.   See Plaintiff's Response, pp. 2, 7-8, 15-16.   For purposes of confirmation, the Defendants noted Plaintiff's concessions and/or acknowledgments with respect to these claims in their reply brief; see Reply Brief, p. 2; and Plaintiff has submitted no sur reply or any other filing to dispute this understanding as to what claims he is or is not pursuing in this case.

Therefore, as Plaintiff now concedes and/or acknowledges that he is not asserting in this case the claims set forth and discussed hereinabove, to the extent his Complaint can be read as

2



having asserted such claims, those claims should be dismissed with prejudice.  See Rule 41(b) Fed.R.Civ.P.

## II.

### (Remaining Claims Defendants Seek to have Dismissed)

In their partial motion to dismiss, Defendants also seek dismissal of Plaintiff's public policy based wrongful termination claim (Count Five), his tortuous interference claim (Count Four), his slander/defamation claim (Count Four), as well as his § 1981 race discrimination claim against Nucor (Count One), his § 1981 and Title VII retaliation claim against Nucor (Count Two), and his § 1981 and Title VII hostile work environment claim against Nucor (Count Three).  When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff.  The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face".  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  "[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the complaint alleges sufficient facts which, if true, would permit a reasonable fact finder to find defendants liable." Vogt v. Greenmarine Holding, LLC, 318 F.Supp. 2d 136, 144 (S.D.N.Y. 2004).

**Wrongful Termination Public Policy Claim.**  In his Fifth Cause of Action, Plaintiff asserts a claim for wrongful termination in violation of public policy against the Defendant Nucor. According to the allegations of the Complaint, during the course of his employment with Nucor Plaintiff was subjected to sexually inappropriate remarks and commentary, including by his direct

3



supervisor, and after he reported this conduct he suffered retaliation and was ultimately terminated from his employment on December 18, 2013. <u>Complaint</u>, ¶ 14 (b - e). Plaintiff also alleges that he was subjected to workplace bullying, which he also reported, but which the Defendant (Nucor) failed to address, and that Nucor also failed to address complaints he made about working conditions. <u>Id.</u>, ¶¶ 29-32, 34-37. Plaintiff further alleges that in September 2013 he made additional complaints with respect to his supervisor making inappropriate sexual remarks, which Nucor again failed to address, following which he was subjected to unwarranted discipline and a hostile work environment. <u>Id.</u>, ¶ ¶ 43-48. Plaintiff alleges that the Defendant Porche thereafter "purposely used the violations to terminate the Plaintiff for his reporting actions". <u>Id.</u>, ¶ 49. <u>See also</u>, ¶ ¶ 60-67, 76, 78-79. Plaintiff alleges that his termination was "in violation of a clear mandate of public policy and in violation of South Carolina law". <u>Id.</u>, ¶ 140.

Defendants assert that Plaintiff's public policy claim is subject to dismissal because Plaintiff has or had existing statutory remedies for his discharge claim. The undersigned is constrained to agree. In <u>Ludwick v. This Minute of Carolina, Inc.</u>, 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will employee[2] constitutes a violation of a clear mandate of

---

[2]Notably, Plaintiff asserts in a separate cause of action that he was *not* an "at will" employee, as he contends in his Fourth Cause of Action that he had a contract of employment with the Defendant, with which with the Defendants Porche and Stow intentionally interfered. <u>See</u> discussion, <u>infra</u>. However, except for a very narrow exception, which does not appear to be applicable in this case, the South Carolina "Supreme Court has not expanded the public policy exception beyond contracts like the one in <u>Stiles v. Am. Gen. Life Ins. Co.</u>, 516 S.E.2d 449, 450 (S.C. 1999)]. <u>See</u> <u>Cunningham v. Anderson County</u>, 741 S.E.2d 545, 556-557 (S.C.Ct.App. 2013); <u>Stiles</u>, 516 S.E.2d at 452 (Toal, J., concurring) ["[T]he [public policy] exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for

(continued...)

4



public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law". Id, at 216. See also Culler v. Blue Ridge Electric Cooperative, Inc., 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law"; Barron v. Labor Finders of South Carolina, 682 S.E.2d 271, 273 (S.C.Ct. App. 2009), aff'd as modified by, 713 S.E.2d 634 (S.C. 2011); although some other limited situations may also apply. See Barron, 713 S.E.2d at 637 [noting that there may be cases where a public policy wrongful termination claim could be pursued even where a discharge did not itself violate a criminal law or the employer did not require the employee to violate the law], citing to Garner v. Morrison Knudsen Corp., 456 S.E.2d 907 (S.C. 1995) and Keiger v. Citgo Coastal Petroleum, Inc., 482 S.E.2d 792 (S.C.Ct.App. 1997); see also McLendon v. Horry County Police Department, No. 13-3403, 2016 WL 1168142 at * * 7-8 (D.S.C. Mar. 25, 2016). However, Plaintiff has failed in the allegations of his Complaint to identify any public policy violation pursuant to this standard.

---

[2](...continued)
a clear violation of public policy where no other reasonable means of redress exists."]. Even so, this apparent contradiction (Plaintiff pleading both that he is an at-will employee and a contract employee) does not itself entitle Defendant to dismissal of this claim, at least at this early stage of the proceedings. In re Building Material Corp. Of America Asphalt Roofing Shingle Products Liability Litigation, Nos. 12-82, 11-2000, 2013 WL 1282223 at * 10 (D.S.C. Mar. 27, 2013)["[P]leadings in the alternative are a common practice in the early stages of litigation."]; cf. Burge Oils, Inc. v. M&F Mktg. Dev. LLC, No. 03-11559, 2005 WL 629489 at * 3 (D.Mass. Mar. 12, 2005)[Denying motion to dismiss unjust enrichment claim even where such claim relied on the "same allegations that support the contract-based claims . . . but states an alternative equitable theory of recovery if the contract claims proved insufficient."]. However, this is not the same issue as whether the claim should be dismissed because Plaintiff has a statutory remedy, discussed hereinabove, infra. See Frazier v. Target Corp., No. 09-1625, 2009 WL 3459221 at * 3 (D.S.C. Oct. 27, 2009)["[C]ourts routinely dismiss tort claims for wrongful discharge that are barred by statutory remedies at the 12(b)(6) stage."].



First, there is no indication in the allegations of Plaintiff's complaint that a violation of a criminal law was involved in this matter. Rather, Plaintiff specifically alleges in his public policy cause of action that the Defendant's termination of him was wrongful because it was a result of his having reported issues involving the Defendant's "Plant, Discrimination, Sexual Harassment, Encouraging Union Activity, Violation of the Policies and Procedures of the Defendant [and] Neglect of the Individuals in the care of the Defendant". Complaint, at ¶ 37.[3] However, even assuming that the Defendant did terminate the Plaintiff for reporting discriminatory conduct or violations of workplace rules or the Defendant's own policies and procedures,[4] as Plaintiff alleges, there is no indication in Plaintiff's allegations of criminal activity. Lawson v. South Carolina Dept. of Corrections, 532 S.E.2d 259, 260-261 (S.C. 2000)[Public policy claim arises where "an employer requires an employee to violate the [criminal] law or the reason for the employee's termination was itself a violation of a criminal law"]; cf. Eady v. Veolia Transp. Services, Inc., 609 F.Supp.2d 540, 559 (D.S.C. 2009); King v. Charleston County School District, 664 F.Supp.2d 571, 584-585 (D.S.C. May 21, 2009); Love v. Cherokee County Veteran's Affairs Office, No. 09-194, 2009 WL 2394369, at * 3 (D.S.C. Jul. 31, 2009)[Granting Rule 12 motion to dismiss where no inference could be drawn

---

[3]In his response in opposition Plaintiff argues that the Defendant's contention that his public policy claim should be dismissed because he has statutory remedies for his discrimination claims is without merit, because his "claims for wrongful termination in violation of public policy have nothing to do with the discrimination but the Plaintiff's reports to individuals regarding the action of Nucor in violation of the law". Plaintiff's Brief, p. 11. However, that is not what Plaintiff alleges in his Complaint, which specifically cites to the Defendant's allegedly discriminatory conduct when referencing his public policy claim. Complaint, ¶ 137.

[4]While ¶ 137 of the Complaint also indicates that Plaintiff was terminated for "encouraging union activity", there are no allegations in the "Factual Background" portion of the Complaint relating to union activity.

6



from the facts alleged that the Plaintiff's termination was in violation of a criminal law]; Barron, 682 S.E.2d at 273-274 [No wrongful discharge action where employee was not asked to violate the law and his termination did not violate the criminal law]; Merck v. Advanced Drainage System, Inc., 921 F.2d 549, 554 (4th Cir. 1990)[The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

Further, even in those limited (and as yet undefined[5]) circumstances where the violation of a criminal statute is not involved, a Ludwick claim still cannot be asserted where there are federal or state statutory remedies available to vindicate the public policies allegedly implicated by a plaintiff's termination, as the South Carolina Supreme Court has explicitly held that "[w]hen a statute  creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278 at *3 (D.S.C. Sept. 20, 2006) (citing Lawson, 532 S.E.2d 259); see Barron, 713 S.E.2d at 637 [noting that, even where an at-will employee might otherwise have a public policy wrongful termination claim even when no criminal violation is involved, "[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination"].  Here, Plaintiff has or had a statutory remedy for his alleged wrongful termination claim under various state and federal civil rights statutes; indeed, he is asserting claims for his allegedly wrongful termination in this lawsuit under two of those statutes (§ 1981 and Title VII) in separate causes of action.  Cf. Washington v. Perdue Farms, Inc., No. 07-3552, 2009 WL 386926 (D.S.C. Feb. 13, 2009) [Dismissing public policy claim where employer purportedly denied

---

[5]See Barron, 713 S.E.2d at 637-638; McLendon, 2016 WL 1168142 at * * 7-8.



employee's request for FMLA leave, which neither violated a criminal law nor required the employee to do so]; Jefferson v. Chestnut Group, Inc., No. 08-3728, 2009 WL 302312 at * 2 (D.S.C. Feb. 6, 2009)[Dismissing state public policy claim where Plaintiff clearly had a potential remedy under South Carolina Human Affairs Law and Title VII]. Additionally, to the extent Plaintiff's claims involve his purported reporting of work place safety or other non-discrimination employment issues, Plaintiff again has or had statutory remedies available for any such claims. See 29 U.S.C. § 158(a) [National Labor Relations Act]; 29 U.S.C. § 660(c) [Occupational Safety & Health Act]. See also Stiles v. Am. Gen. Life Ins. Co., 516 S.E.2d 449, 452 (S.C. 1999) ["[T]he Ludwick exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where not other reasonable means of redress exists."]; Palmer, 2006 WL 2708278, at * 3 [[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination"].

Finally, to the extent Plaintiff contends his termination was due to his allegedly complaining about violations by the Defendant of its own policies and procedures, his discharge again would not be because of the violation of any clearly mandated "public policy" as defined by the South Carolina courts, but because of an alleged violation of his personal rights. The public policy exception for the discharge of an at-will employee encompasses only "public rights", not "private" rights, and this claim therefore fails to set forth a valid claim for wrongful discharge in violation of the public policy of South Carolina. See Weinberger v. MCI Telecommunications, Inc., No. 92-2550, 1994 WL 18081 at * 3 (4th Cir. Jan. 25, 1994) ["The public policy exception



encompasses only public rights granted by existing law, not private rights."].[6]

In sum, as Plaintiff has statutory remedies for his retaliatory termination claim, he may not pursue a separate state law public policy/wrongful termination cause of action in this lawsuit. Zeigler v. Guidant Corp., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The Ludwick exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."] (quoting Stiles, 516 S.E.2d at 452); Palmer, 2006 WL 2708278, at * * 3 and 5; Ramsey v. Vanguard Servs, Inc., No. 07-265, 2007 WL 904526 at *1 (D.S.C. Mar. 22, 2007); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992); see Merck, 921 F.2d at 554 [The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].  The Defendant is therefore entitled to dismissal of Plaintiff's Fifth Cause of Action. Frazier, 2009 WL 3459221 at * 3 ["[C]ourts routinely dismiss tort claims for wrongful discharge that are barred by statutory remedies at the 12(b)(6) stage."]; Love, 2009 WL 2394369, at * 3 [Granting Rule 12 motion to dismiss public policy claim].

**Tortuous Interference Claim**.  As part of his Fourth Cause of Action, Plaintiff alleges that the Defendants Porche and Stow "intentionally interfered with the Plaintiff's employment

---

[6]While Plaintiff could perhaps have some type of claim under this theory of liability under the South Carolina Whistleblower Act, even that law contains a statutory remedy for retaliatory discharge.  See S.C. Code Ann. § 8-27-20(A).  Therefore, Plaintiff would still not be able to pursue a "public policy" claim.  Lawson, 532 S.E.2d at 261 ["[w]hen a statute creates a substantive right [i.e., such as the Whistleblower statute] and provides a remedy for infringement of that right, the Plaintiff is limited to the statutory remedy"].  In any event, Plaintiff has not asserted a claim under this statute, or any other specific state law or statute, in this lawsuit; rather, in the relief portion of his complaint he only generally asks for such other relief as may be appropriate to effectuate the purposes of "South Carolina common law, South Carolina Statutory Law".  See Complaint, Relief Section, ¶ 8.



contract in order to have the Plaintiff terminated". <u>Complaint</u>, ¶ 130. With respect to this claim, Defendants correctly note that one of the elements for maintaining a claim for tortuous interference with an employment contract is the actual existence of an employment contract. <u>See</u> <u>Camp v. Springs Mortgage Corporation</u>, 426 S.E.2d 304, 305 (S.C.Ct.App. 1993); <u>BCD, LLC v. BMW Mfgs. Co., LLC</u>, No. 05-2152, 2008 WL 304878, at * 16 (D.S.C. Jan. 31, 2008); <u>DeBerry v. McCain</u>, 274 S.E.2d 293, 296 (S.C. 1981). Thereafter, a claim of tortuous interference requires that a third party have intentionally interfered with the execution of that valid and enforceable contract. <u>See</u> <u>Green v. Mastodon Ventures</u>, No. 07-3805, 2008 WL 4211122, at * 2 (D.S.C. Sept. 8, 2008).

Assuming, without deciding, that Plaintiff has adequately alleged that he had a "contract" of employment with the Defendant Nucor,[7] it is readily apparent from a plain reading of the allegations of the Complaint that Porche and Stow were both employees of Nucor during the

---

[7]In South Carolina, there is a presumption that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim that a contract of employment existed, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contact beyond the at-will relationship . . . .". <u>Perrine v. G4S Solutions (U.S.A), Inc.</u>, No. 11-1210, 2011 WL 3563110, * 2 (D.S.C. Aug. 9, 2011); <u>see also</u> <u>Prescott v. Farmer's Tel. Co-Op., Inc.</u>, 516 S.E.2d 923, 927, n. 8 (S.C. 1999) [In South Carolina, "there is a presumption of at-will employment"]. Plaintiff only alleges in his Complaint that he was employed with Nucor from October 8, 1996 through December 20, 2013, and that while employed he was issued an employee handbook that set forth the policies and procedures of the Defendant. <u>Complaint</u>, ¶ ¶ 22-25. However, while an employer can alter an employee's at-will status through mandatory language in a handbook; <u>cf</u>. <u>Grant v. Mt. Vernon Mills, Inc.</u>, 634 S.E.2d 15, 20 (S.C.Ct. App. 2006); Plaintiff does not actually make this claim in his Complaint (although it can possibly be inferred), he sets forth no specific allegations to establish such a claim, nor does he even reference a specific handbook or employee manual or any sufficiently "mandatory" language therefrom. <u>See</u> <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002) [Plaintiff has burden of alleging facts sufficient to state all of the elements of the claim]. Even so, Porche and Stow have not argued as part of their motion to dismiss that Plaintiff did not have an employment contract with Nucor. Therefore, the undersigned has assumed for purposes of consideration of these Defendants' motion that Plaintiff did have a contract of employment with Nucor.



relevant time period, and that the actions these Defendants took, and of which Plaintiff complains, were taken by them in the course of their employment.  See generally, Complaint, ¶ ¶ 7-8, 30-32,[8] 44-47, 49-50, 52, 54, 61, 71, 77.[9]  A claim of tortuous interference requires that a "third party" have intentionally interfered with the performance of an otherwise valid and enforceable contract.  Green, 2008 WL 4211122, at * 2; see also Ross v. Life Ins. Co. of VA., 259 S.E.2d 814, 815 (S.C. 1979); Love v. Gamble, 448 S.E.2d 876, 882 (S.C.Ct.App. 1994).  Conversely, agents and employees of a corporation, such as Stow and Porche, "cannot interfere with that corporation's contracts, since the corporation can only act through its agents and employees".  Wencoast Rests., Inv. v. Chart Capital Partners LP, Nos. 05-1650 and 05-1651, 2006 WL 490101, at * 3 (D.S.C. Feb. 28, 2006).

       In his memorandum opposing the Defendants' motion, Plaintiff does not contest that Porche and Stow would ordinarily be considered agents of Nucor.  However, Plaintiff notes that an agent's privilege is a qualified privilege, and applies only when the agent is acting within the scope of their employment.  See Kia v. Imaging Scis. International, Inc., 735 F.Supp. 2d 256, 268 (E.D.Pa. 2010).  While Plaintiff is correct, this qualification of the agent's privilege does not save Plaintiff's claim here, as he has set forth no factual allegations to establish, or to even create an inference, that either of these two Defendants was acting outside the scope of their employment with Nucor during

---

[8]These paragraphs allege improper conduct by Plaintiff's "supervisor" and "plant manager".  Plaintiff does not specifically identify Porche and Stow as being these individuals, although he does allege later on in his Complaint that Porche was one of his supervisors, and that Stow was the "Department Manager".  Complaint, ¶¶ 44, 54.

[9]In his memorandum opposing the Defendants' motion, Plaintiff also mentions actions taken by someone named "Lane".  See Plaintiff's Brief, p. 12.  However, there is no "Lane" named as a party Defendant in this case, nor are any allegations set forth in the Complaint against any such individual.



the relevant time period. To the contrary, Plaintiff specifically alleges in his Complaint that "Nucor through its supervisor and plant manager failed and refused to address the harassment of the Plaintiff" (¶ 32), that the Defendant Porche (as Plaintiff's "supervisor") disciplined him (¶ 46), that Porche (again, acting as Plaintiff's supervisor) issued Plaintiff two disciplinary actions (¶ 47), that Porche then "purposefully used the violations to terminate the Plaintiff for his reporting actions" (¶ 49), that Stow (in his position as an employee of Nucor) placed "lies" about Plaintiff "in the log" (¶ 52), that when Plaintiff met with Stow (his "Department Manager") to complain about being disciplined more harshly than other employees, Stow replied that "he made the rules" (¶ 54), and that Porche and Stow's actions led to Plaintiff being "terminated from his employment" (¶ 131).

There are simply no factual allegations in the Complaint to establish, or to even give rise to an inference, that either Porche or Stow was acting outside the scope of their employment when they were allegedly engaging in the conduct of which Plaintiff complains, and therefore the undersigned does not find that Plaintiff has set forth sufficient factual matters to state a "plausible" claim for relief "on its face" with respect to his claim for tortuous interference with a contract. Iqbal, 129 S.Ct. 1949 [Rule 12 motion should be granted where Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face"]; Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)["Complaint must contain facts which state a claim as a matter of law . . . ."]; see also Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]. Porche and Stow are therefore entitled to dismissal of this claim.

12



**Defamation Claim**.  Plaintiff also asserts a claim for "slander"[10] in his Fourth Cause of Action against the Defendants Porche and Stow.  Specifically, Plaintiff alleges that the Defendant Stow lied about him and "placed the lies in the log" (¶ 52), that the Defendants Porche and Stow "made certain defamatory statements regarding the Plaintiff.  The defamatory statements led to the Plaintiff's recommendation for termination" (¶ 71), that "[a]fter the transfer[11] of the Plaintiff, the Defendants Andre Porche and Chris Stow made several false defamatory statements regarding the Plaintiff" (¶ 128), and that "Porche and Stow intentionally slandered the Plaintiff in order to have the Plaintiff terminated" (¶ 129).

In South Carolina, the elements for a defamation claim are: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.  Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C.Ct.App. 2001).  Defendants argue that Plaintiff's defamation (slander) claim is subject to dismissal because Plaintiff has failed to actually allege what the purportedly false and defamatory statements were that were made by these two Defendants, nor does the Complaint contain any factual allegations showing a third party to whom these statements were allegedly published.  Murray, 542 S.E.2d at 748 [requiring publication of alleged defamatory comments to third parties].  The undersigned agrees that, through and by the allegations set forth hereinabove,  Plaintiff has only

---

[10]Defamatory communications can take two forms; liable and slander.  Slander is a spoken defamation, while liable is a written defamation or one accomplish by actions or conduct.  Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C. 1999).

[11]Other than this one reference in ¶ 128, Plaintiff's Complaint contains no claims or allegations about any transfer.



conclusorily alleged that Porche and Stow defamed him, without actually setting forth what the allegedly defamatory statements were and to whom they were made.  See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Conclusory allegations insufficient to maintain claim]; Iqbal, 556 U.S. at 681 [Allegations that are no more than conclusions are not entitled to the assumption of truth]; cf. Johnson v. Holder, No. 11-2650, 2012 WL 4587355 at * 1 (D.S.C. Sept. 28, 2012) ["A formulaic recitation of the elements of a cause of action will not do"] quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), adopted by, 2013 WL 314753 (D.S.C. Jan. 28, 2013).

Significantly, in his response to the Defendants' motion (wherein Defendants set out their argument that Plaintiff has failed to allege facts showing what defamatory statements were made and to whom those statements were made), Plaintiff still fails to identify what exactly the defamatory statements are that these two Defendants supposedly made, or the third party to whom those statements were made.[12]  Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging fact sufficient to state all the elements of the claim].  Instead, Plaintiff solely addresses an alternative argument made by the Defendants for dismissal of this claim involving whether a Plaintiff can even maintain a claim for defamation against a supervisor or a department manager based on their termination.  See Plaintiff's Brief, p. 14.

Plaintiff's general and conclusory allegations that Porche and Stow slandered him, without actually stating what the allegedly defamatory statements were or to whom those statements

---

[12]The undersigned also notes that, although Defendants' motion has been pending for some time, Plaintiff has never sought to amend his Complaint to address any of these defects in his pleading.  See Jones v. South Carolina Dep't of Corrections, No. 07-1876, 2009 WL 890646, at * 2 (D.S.C. Mar. 30, 2009) [Allowing Plaintiff the opportunity to file an amended complaint prior to dismissing claim].

14



were made, are not sufficient to state a claim for slander under the applicable law and standards.  See

Twombly, 550 U.S. at 555 ["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief

above the speculative level"]; House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations

insufficient to maintain claim]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"].

Therefore, these Defendants are entitled to dismissal of this claim.  see also Harper, 423 F.Supp. at

196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these

claims may be properly dismissed by summary dismissal"].[13]

       **Title VII Race-Based Claims Against Nucor**.  In his Complaint, Plaintiff asserts

race-based claims against Nucor for retaliation and hostile work environment in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.  Complaint, Counts Two and Three; see

also Section 1 of this opinion, supra [waiving or withdrawing certain claims].  Defendant argues that

Plaintiff failed to exhaust his administrative remedies under Title VII before pursuing these claims

in this lawsuit, thereby subjecting them to dismissal.[14]  The undersigned agrees.

       In order to proceed with his claims for retaliation and hostile work environment under

Title VII, Plaintiff must first have exhausted his administrative remedies.  See Sloop v. Memorial

---

[13]As a result of the recommended dismissal of both Plaintiff's tortuous interference with contract and defamation claims, Plaintiff's Fourth Cause of Action should be dismissed, in toto, as those are the only two claims asserted in that cause of action.

[14]While Plaintiff also asserts these claims under 42 U.S.C. § 1981, there is no administrative exhaustion requirement for a § 1981 claim.  Caetio v. Spirit Coach, LLC, 992 F.Supp.2d 1199, 1209 (N.D.Ala. 2014) ["There are no administrative prerequisites to the maintenance of a § 1981 claim."].



Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [claimant must first exhaust administrative remedies with regard to their claim before filing the claim in federal court]. This requires that Plaintiff first bring his charges before the South Carolina Human Affairs Commission (SHAC) or the Equal Employment Opportunity Commission (EEOC), and obtain a right to sue letter. Smith v. First Union Nat'l. Bank, 202 F.3d 234, 247 (4th Cir. 2000)["Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC [or SCHAC]"]; see also See 42 U.S.C. § 2000e-5(e). Plaintiff alleges in his Complaint that he filed a charge of discrimination against the Defendant with SCHAC and the EEOC, asserting (inter alia) that he had been retaliated against for engaging in protected activity and subjected to a hostile work environment in violation of Title VII. See Complaint, ¶ ¶ 13-14. Defendant argues, however, that Plaintiff only alleged in his administrative charge that he had been subjected to a "sexually" hostile work environment by his male co-workers and retaliated against for reporting this allegedly hostile environment, and that he made no allegations whatsoever of any harassment or retaliation based on his race. As support for this argument the Defendant has attached a copy of Plaintiff's EEO charge as Exhibit A to its motion,[15] and a review of this administrative charge confirms that Plaintiff only

---

[15]The Court may consider this exhibit in ruling on Defendant's motion to dismiss. See Williams v. 1199 Seiu United Healthcare Workers East, No. 12-72, 2012 WL 2923164 at * 1 n. 1 (D.Md. July 17, 2012)["In the employment context, a court may consider an EEOC charge and other EEOC documentation [when considering a motion to dismiss] because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme."] (citing Holowecki v. Fed. Express Corp., 440 F. 3d 558, 565-566 (2d Cir. 2006); McDougall v. Maryland Transit Auth., No. 11-3400, 2012 WL 1554924 at n. 3 (D.Md. Apr. 27, 2012)["a plaintiff's administrative discrimination charge is integral to a subsequent discrimination complaint."]).



asserted therein claims for retaliation and hostile work environment based on sex.[16]

In determining the scope of Plaintiff's exhausted claims, the Court is bound by the scope of Plaintiff's claims as are set forth in his administrative charge, and only those discrimination claims set forth in the administrative charge and reasonably related thereto or were developed by a reasonable investigation of the claims set forth in the original charge may be maintained in a subsequent Title VII lawsuit. Bryant v. Bell Atlantic MD., Inc., 288 F.3d 124, 132 (4th Cir. 2002); Evans v. Techs. Applications & Serv., Co., 80 F.3d 954, 963 (4th Cir. 1996); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). "Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumscribe [the administrative agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely . . . charge"]; Dorsey v. Pinnacle Automation, Co., 278 F.3d 830, 838 (8th Cir. 2002). Critically, in his response to the Defendant's motion to dismiss, Plaintiff does not even address this deficiency, instead stating simply that "Plaintiff has presented a cause of action against the Defendant for Retaliation and Hostile Work Environment against Nucor for violations of Title VII *as presented in the charge of discrimination*". Plaintiff's Brief, p. 8 (emphasis added). This would appear to be a concession by the Plaintiff that he is not (or cannot) pursue a claim in this case against Nucor for retaliation and hostile work environment under Title VII based on race, although Defendant is correct that Plaintiff does reference race as being a basis for his

---

[16]The box for where Plaintiff would assert a discrimination claim based on race is unchecked, while the narrative set forth in the administrative charge states that Plaintiff "made several reports of sexually inappropriate commentary and hostile work environment" and that he "suffered from retaliation at the hands of the individuals that I reported the sexually inappropriate commentary to and about". See Defendant's Exhibit A [Administrative Charge of Discrimination].



claims in the narrative portion of both his Second and Third Causes of Action (while not actually stating whether they are being brought under Title VII or § 1981).

In any event, as noted, Plaintiff's administrative charge clearly only asserted claims for retaliation and hostile work environment based on sex, and did not set forth any claim for retaliation or hostile work environment based on his race. Cf. DeClue v. Central Illinois Light Co., 223 F.3d 434, 437 (7th Cir. 2000)[Sexual harassment is a "distinct . . . form of intentional sex discrimination]. Therefore, Plaintiff's race-based retaliation and hostile work environment claims, to the extent they are based on a violation of Title VII, should be dismissed. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)[Claims that exceed the scope of an administrative charge and any claim that would have naturally arisen from an investigation thereof are procedurally barred].

**Section 1981 Claims**. In his Complaint, Plaintiff asserts claims against Nucor for race discrimination, retaliation, and hostile work environment in violation of 42 U.S.C. § 1981. See Complaint, First, Second and Third Causes of Action; see also, Section 1 of this opinion, supra [waiving or withdrawing certain claims]. To pursue a claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [his] race,[17] and that

---

[17] While Plaintiff also discusses sexual harassment and purported retaliation for complaining about sexual harassment in his Second and Third Causes of Action, those claims must be pursued by Plaintiff under Title VII. Section 1981 is not applicable to claims involving sex discrimination. See Butler v. Crittenden County Ark., 708 F.3d 1044, 1051 (8th Cir. 2013) [§ 1981 does not encompass sex discrimination or retaliation claims]; Jachyra v. City of Southfield, 97 F.3d 1452, at * 2 (6th Cir. 1996) ["[Plaintiff] cannot state a claim under § 1981 because claims of sex discrimination are not cognizable under this section"]; Torres-Santiago v. Alcarax-Emmanuelli, 553 F.Supp.2d 75, 85 (D.P.R. 2008) [§ 1981 does not proscribe gender based discrimination]. Therefore, Plaintiff cannot assert his Second and Third Causes of Action for retaliation and hostile work environment on the basis of sex or sex discrimination under § 1981. Kilcrease v. Coffee County Ala., 951 F.Supp. 212, 215 (M.D.Ala. 1996) ["A claim of discrimination on the basis of . . . sex cannot be maintained under
(continued...)



the discrimination interfered with a contractual interest."[18] Denny v. Elizabeth Arden Salons, Inc.,
456 F.3d 427, 434 (4th Cir. 2006). In order to survive the Defendant's motion to dismiss and proceed
with these claims, Plaintiff's Complaint must set forth sufficient factual matters to state a plausible
claim of intentional discrimination based on his race.

### Race Discrimination Claim

Plaintiff's race discrimination claim (First Cause of Action) may be proved either by
direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973).[19] Under the framework established by the Supreme Court in McDonnell Douglas,
Plaintiff can meet this standard (at least for purposes of a motion to dismiss) through allegations
sufficient to reasonably infer a prima facie case of discrimination;[20] i.e., by showing that 1) he is a

---

[17](...continued)
§ 1981"].

[18]While, as previously discussed, Plaintiff offers conflicting allegations in his Complaint as
to whether he had an employment contract with the Defendant, even if he did not, that would not by
itself defeat his § 1981 claims. See Sellers v. South Carolina Autism Soc., Inc., 866 F.Supp. 2d 692,
695-698 (D.S.C. 2012) [Concluding that "at-will employment in South Carolina is contractual in
nature and may support a claim under Section 1981."].

[19]Although McDonnell Douglas is a Title VII case, the standards applicable to lawsuits under
§ 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same
caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light
Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the
same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp.
933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).

[20]See Gladden v. Solis, No. 11-3120, 2012 WL 3009275 (3rd Cir. July 24, 2012)[To survive
a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that
discovery will reveal evidence of necessary elements of the prima facie case]; Coleman v. Md. Court
of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see also Johnson v. Scotts Co., No. 11-20, 2011 WL
6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need
(continued...)



member of a protected class; 2) he was qualified for the job at issue; 3) he was subjected to an adverse employment action; and 4) that the position was filled ( in the case of termination) by someone who is not a member of his protected class, or there is some other evidence sufficient to give rise to an inference of unlawful discrimination.  See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995).  See Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996); see also Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Plaintiff has alleged in his Complaint that he is a member of a protected class (white),[21] that he was qualified for his job and performing his job duties well, and that he was subjected to an adverse employment action when he was terminated.  See generally, Complaint, ¶¶

---

[20](...continued)
only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002).

[21]When a Plaintiff is a member of a majority class, some courts have held that they must also set out background circumstances to show that the Defendant discriminates against the majority.  Farr v. St. Francis Hosp. and Health Centers, 570 F.3d 829, 833 (7th Cir. 2009); Wilson v. Ohio, 178 Fed.Appx. 457, 464-465 (6th Cir. 2006)[In adapting the McDonnell Douglas test to cases of reverse discrimination, the Plaintiff must demonstrate "background circumstances [to] support the suspicion that the Defendant is the unusual employer who discriminates against the majority."] (Quoting Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985)).  However, whether this heightened burden standard is applicable in the Fourth Circuit is unclear.  See Weeks v. Union Camp Corp., Nos. 98-2814 and 98-2815, 2000 WL 727771, at n. 13 (4th Cir. 2000); McNaught v. Virginia Community College System, 933 F.Supp.2d 804, 818-819 (Mar. 20, 2013)[Noting that "[t]he Fourth Circuit has not taken a position officially on this issue and, in fact, repeatedly has refused to do so."]; Mason v. North Carolina Dep't. of Corrections, No. 12-382, 2014 WL 3891360 at * 3 (E.D.N.C. Aug. 7, 2014) [same].  In any event, for the reasons set forth and discussed hereinabove, Plaintiff's claim fails even with out being considered under this heightened standard.

20



3, 20-23, 26, 28, 49, 64-65, 74.  However, with respect to the fourth prong of his <u>prima</u> <u>facie</u> case;

i.e., whether Plaintiff has alleged factual allegations sufficient to give rise to a plausible claim that

the Defendant discriminated against him or terminated him because of his race,[22] Defendant argues

that Plaintiff has failed to set forth factual allegations with sufficient specificity to survive dismissal

of this claim.  <u>Iqbal</u>, 556 U.S. 681 [Allegations that are no more than conclusions are not entitled to

the assumption of truth]; <u>House</u>, 824 F.Supp. at 485 [Conclusory allegations insufficient to maintain

claim].  The undersigned agrees.

        At the end of the "Factual Background" portion of his Complaint, Plaintiff alleges that

he was "treated differently than other similarly situated African American Male employees (¶ 72) and

received "much harsher punishment than . . . other employees who were Black [even though] Plaintiff

allegedly committed the same or similar acts . . . ." (¶ 73).  Then, in his First Cause of Action,

Plaintiff alleges that he was "discriminated against on the basis of his race" (¶ 94), was treated

"significantly differently than other African American Employees" (¶ 95), that his "differential

treatment was purely based on the Plaintiff's race" (¶ 96), that "other African American employees

who committed the same or worse acts than Plaintiff was alleged to have committed were not

disciplined or terminated for their act" (¶ 99), that the Defendant "considered the Plaintiff's race

when it terminated him from his employment" (¶ 101), and that the Defendant "discriminated against

the Plaintiff based on his race" (¶ 102).  These are all quintessentially conclusory allegations.

However, with respect to whether Plaintiff has set forth any factual allegations to support these

assertions, a review of the Complaint reveals that Plaintiff sets forth numerous allegations of

---

[22]There is no allegation that he was replaced by someone from outside of his protected class.



allegedly unfair or improper treatment by his supervisors, noting in several instances where his supervisor's conduct may have had a sexual inference, but fails to allege anywhere in his factual allegations any racial statements by these supervisors or any other conduct by his supervisors during or surrounding these events to evidence a racial animus or racial motivation behind the conduct alleged. See generally, Complaint, ¶¶ 14(b)-(d), 29-32, 37, 43-47, 49, 52, 54-55, 61, 64-65, 71.

Further, while Plaintiff makes reference to other employees in the narrative of his Complaint, he fails to make any allegations of a racial nature with respect to the incidents involving these other employees, or to even state the race of these other employees.[23]  Plaintiff also fails to identify the race of his supervisors anywhere in his Complaint.[24]  Similarly, although Plaintiff states in his response brief that "[a]s set forth in the facts, Mr. Porche was permitted to make inappropriate . . . racist remarks . . . .", he fails to cite to any of these "facts," or to where they might be found in his Complaint.  Plaintiff further states that "Plaintiff has presented several facts in the Factual Statement that would lead to plausibility that the Defendant is liable for the actions of discriminating against the Plaintiff based on his race", and that he has "presented facts that the actions were taken against him based on his race".  Plaintiff's Brief, pp. 15-16.  However, as with this Complaint, Plaintiff fails to set out or specify how any of the conduct Plaintiff alleges occurred was based on his

---

[23]For example, in ¶¶ 30 and 32, Plaintiff complains about having been harassed by another employee named Parker.  Parker's race is not provided.  In ¶ 37, Plaintiff complains about an incident where he was sent for a drug test but "[a]nother employee" was not.  However, this other employee is not identified, nor is their race provided.  In ¶ 4, Plaintiff alleges that he met with Department Manager Stow and complained about being disciplined more harshly than "others".  However, these "others" are never identified, nor are their races provided.  In ¶ 60, Plaintiff alleges that he submitted a complaint regarding "other individuals failing and refusing to work".  Again, however, these "other individuals" are not identified, nor are their races provided.

[24]Defendant represents in its brief that both Stow and Porche are, like the Plaintiff, white.



race or had a racial component.[25]  Austen v. H.C.A. Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203, at * 1 (4th Cir. Mar. 12, 2001) [To establish a prima facia case of race discrimination, Plaintiff must show that there is some evidence giving rise to an inference of unlawful discrimination]; Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging fact sufficient to state all the elements of the claim].

Plaintiff cannot survive the Defendant's Rule 12 motion to dismiss simply by saying that he is white and was subjected to adverse employment actions because of his race.  Rather, he is required to provide in his Complaint some specific factual allegations to establish a "plausible claim" that this in fact happened.  Iqbal, 556 U.S. 681 [Allegations that are no more than conclusions are not entitled to the assumption of truth].  None of Plaintiff's allegations in his Complaint set forth any *facts* to show or infer that the actions taken against him by Porche, Stow, or anyone else had anything to do with his race.  Cf. Nichols v. Caroline County Bd. of Educ., 123 Fed.Supp.2d 320, 327 (D.Md. 2000)[Plaintiff's contention that supervisors subjected him to adverse employment actions "because I am who I am" insufficient to establish [discriminatory] character to their disagreements and misunderstandings].  Therefore, Plaintiff has failed to set forth the necessary factual allegations to proceed with an race discrimination claim under § 1981, and his First Cause of Action for race discrimination should be dismissed.  Carpenter v. County School Board, 107 Fed.App'x. 351, 351-352 (4th Cir. 2004) [Claim subject to dismissal where Plaintiff does "nothing more than state that he was in a protected class and that he suffered adverse employment decision"]; Dickson, 309 F.3d at

---

[25]In any event, the Court cannot assume the truth of factual assertions set forth by counsel in a memorandum for purposes of evaluation of a Rule 12 motion to dismiss.  Cf. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [Counsel statements are not evidence].



213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

### Retaliation Claim

Section "1981 . . . prohibits not only racial discrimination but also retaliation against those who oppose it." University of Texas Southwestern Medical Center v. Nasser, 133 S.Ct. 2517, 2529 (2013) (citing CBOCS West Inc. v. Humphries, 553 U.S. 442, 445 (2008). In order to survive the Defendant's motion to dismiss his § 1981 retaliation claim (part of Plaintiff's Second Cause of Action), Plaintiff's allegations must be sufficient to reasonably infer a prima facie case of retaliation;[26] i.e., by showing that 1) he engaged in activity protected under § 1981; 2) the Defendant took an adverse employment action against him; and 3) a causal connection exists between the protected activity and the adverse action. Lettieri v. Equest, Inc., 478 F.3d 640, 650 (4th Cir. 2007); Williams v. Cerberronics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); Munday v. Waste Management of North America, Inc., 127 F.3d 239, 242 (4th Cir. 1997); see Ennis, 53 F.3d at 58 [The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

As already noted, Plaintiff has alleged that the Defendant took an adverse employment action against him. However, Defendant argues, and the undersigned is constrained to agree, that Plaintiff's race based retaliation claim under § 1981 is subject to dismissal because the Complaint contains no allegations to show that Plaintiff ever engaged in protected activity as defined by the relevant case law. Rodas v. Town of Farmington, 918 F.Supp.2d 183, 189 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title

---

[26]See Note 20, supra.



VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."]; see also Ross, 293 F.3d at 1050 ["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim"].

   For purposes of Plaintiff's race based retaliation claim, Plaintiff must have set forth factual allegations in his Complaint sufficient to establish a "plausible" claim that he engaged in protected activity by complaining about racially discriminatory conduct or treatment. Sara Kaye Ruffner v. MD OMG EMP LLC, No. 11-1880, 2012 WL 3542019 at * 3 (M.D. Aug. 13, 2012)["Protected activity does not include opposition to all 'unlawful practices' or 'practices the employee simply thinks are somehow unfair'; the employee must have 'actually opposed employment practices made unlawful by the [anti-discrimination statute"]. Plaintiff's Complaint simply contains no such allegations. Rather, Plaintiff alleges that during his period of employment he made several complaints about *sexually* inappropriate commentary or conduct in his work environment [for which Plaintiff claims was subjected to retaliation] (¶ ¶ 14(b)-(c), 43, 45-46, 76), and that he also complained about various safety and personnel issues [none of which are alleged to have had anything to do with Plaintiff's race]. (¶¶ 29-36, 39-42, 53-64). Sung Kun Kim v. Panetta, No. 11-1370, 2012 WL 3600288 at * 17 (E.D.Va. Aug. 21, 2012) ["Protected activity does not include generalized employment-related complaints unrelated to . . . prohibited discrimination"]. Even in his retaliation cause of action, Plaintiff only mentions race one time, as part of the narrative in ¶ 112 ["That the Defendant, Nucor, terminated the Plaintiff's employment in retaliation for his complaints regarding sexual harassment, hostile work environment, and *race discrimination*"] (emphasis added). However, as previously noted, Plaintiff has failed to actually allege anywhere in the allegations of



his Complaint that he ever made any complaints to management, or to anyone else, about racial discrimination.  See Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) [noting that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief"], quoting Twombley, 550 U.S. at 557 (internal quotations marks omitted); Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) ["I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"]; Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

Similarly, in his brief opposing the Defendants' motion, Plaintiff fails to cite to any complaint of racial animus in his Complaint.  In fact, Plaintiff affirmatively states that the basis of his claim for retaliation "is the fact that the Plaintiff was terminated from his employment not long after making a complaint regarding *sexual* harassment".  Plaintiff's Brief, p. 17 (emphasis added).  Therefore, the Defendant is entitled to dismissal of this claim.

**Hostile Work Environment Claim**

Finally, Defendant Nucor also argues that it is entitled to dismissal of Plaintiff's § 1981 race based hostile work environment claim.  To avoid dismissal of his hostile work environment claim, Plaintiff's Complaint must have factual allegations sufficient to state a plausible claim that 1) he was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on his race; 3) the conduct was sufficiently severe or pervasive to alter his condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some

26



factual basis to his employer.  <u>EEOC v. Cent. Wholesalers, Inc.</u>, 573 F.3d 167, 175 (4th Cir. 2009);

<u>Ocheltree v. Scollon Productions, Inc.</u>, 308 F.3d 351, 356 (4th Cir. 2002), <u>rehearing en banc</u>, 335

F.3d 325 (4th Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 1406 (2004); <u>Spicer v. Com.of Va. Dep't of

Corrections</u>, 66 F.3d 705, 710 (4ᵗʰ Cir. 1995); <u>Brown v. Perry</u>, 184 F.3d 388, 393 (4ᵗʰ Cir. 1999);

<u>Scott v. Health Net Federal Services, LLC</u>, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3,

2012).

Defendant argues that it is entitled to dismissal of this claim for the same reason that

it is entitled to dismissal of Plaintiff's retaliation claim - that is, Plaintiff's Complaint contains no

allegations to tie the adverse actions and conduct he alleges he was subjected to to his being white.

As noted by the Defendant in its brief, "Plaintiff does not allege that he was ever called a racist

epithet or even heard one, or that he was ever subjected to any type of anti-Caucasian graffiti,

symbols, messages, emails, etc.", while in his EEO charge he only asserted his hostile work

environment claim based on purportedly sexually inappropriate and harassing comments and conduct,

not racially inappropriate conduct.  The undersigned agrees that Plaintiff's Complaint is devoid of

any factual allegations showing that the hostile work environment to which Plaintiff alleges he was

subjected had anything to do with his race.  <u>See generally</u>, discussion, <u>supra</u>.

Further, in his response brief, Plaintiff only talks about how Plaintiff, in his

Complaint, "has demonstrated not only that he subjectively perceived his workplace environment as

hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile".

<u>Plaintiff's Brief</u>, p. 23.  Plaintiff fails to ever address how this hostile environment to which Plaintiff

was allegedly subjected had anything to do with his race.  Indeed, Plaintiff's allegations seem to make

clear that his complaint was that he was being subjected to a *sexually* hostile work environment.



27

Complaint, ¶ ¶ 14(b)-(c), (g), 43-47, 49-51, 61, 76.

Therefore, the Defendant is entitled to dismissal of Plaintiff's § 1981 race based hostile work environment claim. See Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; see also Dickson, 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; Twombly, 550 U.S. at 555 ["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"]; Leeds, 85 F.3d at 53 ["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.].

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion to dismiss be **granted,** for the reasons stated.  If these recommendations are adopted by the Court, the only claims remaining in this lawsuit will be Plaintiff's claims against the Defendant Nucor for retaliation and hostile work environment on the basis of gender pursuant to Title VII.  Further, as neither of these two remaining Title VII claims is asserted against the Defendants Porche and Stow, they should be **dismissed** as party Defendants in this case.

The parties are referred to the Notice Page attached hereto.

April 18, 2016                          _____
Charleston, South Carolina              Bristow Marchant
                                        United States Magistrate Judge

28

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).